RALPH PITOCCO *et al. vs.* JAMES LANDI *d.b.a.* DOUGLAS CONSTRUCTION COMPANY.

JAMES LANDI *d.b.a.* DOUGLAS CONSTRUCTION COMPANY *vs.* RALPH PITOCCO *et al.*

JANUARY 18, 1961.

PRESENT: Condon, C.J., Roberts, Paolino, Powers and Frost, JJ.

POWERS, J. These are two actions in assumpsit for breach of a building contract. Ralph Pitocco, Joseph Gagliardi and Frank DiGuiseppe, hereinafter referred to as the owners, commenced their suit by a writ of attachment dated October 17, 1956 against James Landi d.b.a. Douglas Construction Company, hereinafter referred to as the contractor. By a writ of attachment dated November 6, 1956, the contractor brought a cross action against the owners and Angelo Tucci. The cases were consolidated for trial before a superior court justice sitting with a jury and resulted in verdicts of nominal damages for the owners and substantial damages for the contractor.

Thereafter the trial justice granted the owners' motion for a new trial in each case. They are before us on the contractor's bills of exceptions to the granting of such motions and to certain other rulings.

The owners commenced a second action against the contractor by a writ of attachment dated February 28, 1957. The declaration in this second suit alleged that the owners, because of the contractor's breach, were required to expend a greater sum than the contract price in order to complete the construction and repair defective work. By agreement between the parties this declaration was made a third count in the owners' original declaration.

It appears from the record that some time early in July 1956, the owners and the contractor entered into an oral agreement for the construction of a commercial building on Reservoir avenue in the city of Cranston. All parties agree that the original site was abandoned in favor of another and that the initial plans were modified to reduce the estimated cost from $26,500 to an agreed consideration of $22,-

500. It was also agreed that the owners would pay an additional $1,000 for alterations in the foundation.

It is undisputed that the work began on July 24, 1956 and continued until about the second week in September in that year. The parties agree that the contractor was paid a total of $8,000 for work on the building. This amount was received by the contractor in three payments; namely, $1,000 on August 24, a second check for $6,000 on August 29, and a third check for $1,000 on September 6, 1956. All other material details of the negotiations and progress of the work are in sharp conflict.

The owners all testified to the effect that the contractor failed to provide them with a written contract as promised, to carry workmen's compensation insurance for his employees, to provide a foundation in accordance with the plans, and that he abandoned the job without justification. It was also their testimony that at a conference held in the contractor's home after work on the building had ceased, the contractor stated that he wanted a total of $30,000 for the job or he would not complete it.

The testimony of the owners was corroborated in part by Angelo Tucci whom the contractor had joined as a defendant in his suit against them. Several other witnesses furnished testimony tending to corroborate that of the owners.

The contractor testified he advised the owner there would be additional charges which they agreed to pay; contradicted the owners' testimony on insurance; and stated that a copy of the specifications, which constituted the contract, were to have been furnished to him by the owners but never were. It is his testimony that he was to have been paid $8,500 plus an additional $1,000 when the foundation was completed, and the balance in two equal payments. The first of these payments was to have been made when the roof was added and the last upon the completion of the job. It is undisputed that the four walls were under construction when the work stopped.

The contractor further testified that he had laid out more than $8,000 on the building when the work stopped; that he offered to continue with the job if the money due to him were paid; and that when he made this offer he was threatened with physical violence. He asserted that at the conference held at his home Angelo Tucci was introduced by Pitocco as "my silent partner." This latter testimony was corroborated by the contractor's wife.

The trial justice directed a verdict for the defendant contractor on the third count of the owners' declaration, that being the count which was added as a substitute for the claim growing out of the owners' second suit. In the opinion of the trial justice there was no evidence to support that count, and since the owners as plaintiffs have not prosecuted a bill of exceptions to this court the verdict as directed stands.

In the case of the contractor versus the owners, the trial justice directed a verdict in favor of Angelo Tucci on the ground that there was no evidence to show that Tucci was a party to the agreement. The contractor in his bill of exceptions urges that the court was in error. We cannot agree with his contention. It is his own testimony, corroborated by his wife, that he had neither met nor heard of the defendant Tucci until after the work had ceased. It seems to us, as it apparently did to the trial justice, that Pitocco's introduction of Tucci to the contractor with the words "my silent partner" does not support a conclusion that Tucci had any financial interest. This exception is overruled.

The trial justice granted the owners' motion for a directed verdict on the second count of the contractor's declaration on the ground that there was no testimony presented on behalf of the contractor as to the value of the services and work performed under the so-called common counts. The contractor urges in his bill of exceptions that this ruling was also error. We have carefully examined the tran-

script and find that the trial justice's appraisal of the evidence was correct. This exception is overruled.

The remaining exceptions, properly before us for consideration under the rules of this court, are to the granting of the owners' motion for a new trial in each case.

The trial justice instructed the jury that the principal question for them to decide was whether the contract was broken by either party or was mutually rescinded. He charged them that if they found it had been broken by one party or the other, then they should proceed to consider the question of damages as it related to the innocent party. He specifically charged them that they could not return verdicts in favor of both the owners and the contractor, since this would constitute an inconsistency.

The jury returned a verdict in favor of the owners in the nominal sum of $1, presumably on a finding that the contractor had broken the agreement without actual damage to the owners, and a verdict in the sum of $2,000 for the contractor.

In granting the owners' motion for a new trial in each case, the trial justice reviewed the evidence, commented on the credibility of the witnesses, noted inconsistencies in the contractor's evidence, specifically referred to the apparently disinterested witnesses testifying for the owners, and concluded that in each case the verdict preponderated against the evidence.

Prescinding from the merits of the conclusions reached by the trial justice, we are of the opinion that he properly granted the motions, since the jury failed to follow the law as it was given to them. The jury returned conflicting verdicts, each incompatible with the other, and in our opinion the proper disposition was to submit the cases for the determination of another jury against all persons and on all issues not resolved by the directed verdicts as herein deter-

mined. See *Medhurst* v. *McCrohan,* 61 R. I. 150, and *Lander* v. *Samuel Heller Leather Co.,* 314 Mass. 592.

In each case all of the contractor's exceptions are over-ruled, and each case is remitted to the superior court for a new trial in accordance with this opinion.

*Ralph Rotondo,* for owners Ralph Pitocco et al.

*John Quattrocchi, Jr.,* for contractor James Landi.